ROMMEL–McFERRAN COMPANY, Inc.,
Plaintiff-Appellee,

v.

LOCAL UNION NO. 369, INTERNATION-
AL BROTHERHOOD OF ELECTRI-
CAL WORKERS, AFL–CIO,

and

Louisville Building and Construction
Trades Council, an unincorporated labor
organization, Defendants-Appellants.

No. 16444.

United States Court of Appeals
Sixth Circuit.

Decided May 31, 1966.

Charles R. Isenberg, Louisville, Ky.,
for appellants.

E. Gerry Barker, Louisville, Ky., for
appellee.

Before PHILLIPS and EDWARDS,
Circuit Judges, and WILSON, District
Judge.

EDWARDS, Circuit Judge.

This is a suit for damages brought by a general contractor as a result of picketing and a strike at a construction job. Plaintiff claims these activities constitute a secondary boycott induced by defendants in violation of 29 U.S.C. § 158 (b) (4) and § 187. Plaintiff claims defendants' acts forced it to get rid of two nonunion subcontractors and occasioned increased costs to it in relation to the completion of a building job.

The two defendant labor organizations had no primary labor dispute with plaintiff, but they claim their activities were aimed only at the nonunion subcontractors and, hence, were entirely legal.

Rommel-McFerran was a Louisville general contractor which had a half million dollar building contract. In carrying out same the general contractor employed two nonunion subcontractors on the building site, along with union subcontractors and union employees of its own.

After protests from some of the building trades union representatives, the two defendants here involved placed pickets at the construction site. The picketing was peaceful and the picket signs were so written as to be directed only at the subcontractors with whom defendants had a dispute over hiring nonunion employees. The picketing continued for several weeks but ultimately resulted in a work stoppage among the employees of the general contractor. To settle this plaintiff removed the electrical subcontractor (Gunderson) and gave the electrical work to a union subcontractor. His employees then returned to the job.

On completion of the job plaintiff sued the two defendants (and other unions who were dismissed as defendants by the trial judge) for $16,000 compensatory damages and $20,000 punitive damages. This action was brought under Sec. 303 of the Labor-Management Act.[1] See Walters v. International Ass'n of Plumbers & Steamfitters, 323 F.2d 578 (C.A.6, 1963); Aircraft & Engine Maintenance

Union v. I. E. Schilling Co., 340 F.2d 286 (C.A.5, 1965), cert. denied, 382 U.S. 972, 15 L.Ed.2d 464 (U.S. Jan. 18, 1966); Aircraft & Engine Maintenance Union v. Oolite Concrete Co., 341 F.2d 210 (C.A. 5, 1965), cert. denied 382 U.S. 972, 15 L.Ed.2d 465 (U.S. Jan. 18, 1966).

The case was tried before a United States District Judge with a jury which awarded damages of $6,000 against the International Brotherhood of Electrical Workers and $3,000 against the Louisville Building and Construction Trades Council.

On appeal three issues are presented:

1. Do the facts in this case show a violation of Sec. 8(b) (4) (i) (ii) prohibiting secondary boycott?

2. Was there evidence from which the jury could properly have found damages against appellants in the sum of $9,000?

3. Did the closing statement of appellee's counsel constitute prejudicial error so as to require a new trial?

As to the first issue, defendants contend that their picketing was aimed wholly at the nonunion subcontractors and point to evidence where their witnesses denied any objective of compelling plaintiff to get rid of same. They also point to testimony denying any attempts to induce plaintiff's employees to strike.

Plaintiff, however, presented evidence of advance threats made by union representatives to strike the project unless plaintiff got rid of the nonunion subcontractors. Plaintiff's witnesses also testified to defendants' pickets making appeals to plaintiff's employees not to cross the picket line.

■ Where the evidence is in conflict, this court must, of course, on appeal, view the evidence from the point of view favorable to plaintiff, which is represented in the jury verdict. Miller v. Chattanooga Auto Parts, Inc., 350 F.2d 851 (C.A.6, 1965); Lewis v. Dixie-Portland Flour Mills, Inc., 356 F.2d 54 (C.A. 6, 1966).

1. 61 Stat. 158–159 (1947), as amended, 29 U.S.C. § 187 (1964).

The testimony just recited would therefore require answering the first of the appellate questions in favor of plaintiff-appellee. N. L. R. B. v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, 338 F.2d 958 (C.A.6, 1964); Ohio Valley Carpenters District Council, United Brotherhood of Carpenters v. N. L. R. B., 339 F.2d 142 (C.A.6, 1964); N. L. R. B. v. Local 38, International Brotherhood of Electrical Workers, 339 F.2d 197 (C.A.6, 1964).

The same may be said, likewise, of the second question pertaining to proofs of damage. However vague and inconclusive plaintiff's proofs of $16,000 of compensatory damages may be, the jury did not award that figure. Plaintiff's witness McFerran testified flatly that the removal of Gunderson from the job cost plaintiff $9,324.06, and that this loss was not recouped in the final settlement between plaintiff and the owners of the project. The jury award totaled $9,000.

The third appellate issue, however, presents problems which would be grave in any lawsuit and which we find insuperable in this one.

Congress, in passing the Taft-Hartley Act[2] and the Landrum-Griffin Labor Reform Act[3] sought to restrain labor measures which represented secondary boycotts. 73 Stat. 542–543 (1959), 29 U.S.C. § 158(b) (4) (i) (ii) (1964). It also sought to avoid any infringement of labor's legally declared and constitutional rights, and, therefore, specifically excepted from its prohibitions strikes and picketing aimed at employers with whom a labor union had a primary and lawful dispute. 29 U.S.C. § 158(b) (4).

As may be seen in the statute, what is prohibited are certain practices (inducing strike action or using threats or coercion) where "an object thereof is * * * (B) forcing or requiring any person * * * to cease doing business with any other person * * * " 29 U.S.C. § 158 (4) (ii) (B).

The narrowness of these distinctions has led to a series of cases distinguishable on narrow factual grounds in the language of which later disputing parties find comfort or dismay, depending on which side of the controversy they espouse and what specific facts confront them. Local 1976, United Brotherhood of Carpenters v. N. L. R. B., 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958); Local 761, International Union of Electrical Workers v. N. L. R. B., 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961); United Steelworkers of America v. N. L. R. B., 376 U.S. 492, 84 S.Ct. 899, 11 L.Ed. 2d 863 (1964); N. L. R. B. v. Servette, Inc., 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed. 2d 121 (1964).

It is clear from these cases that the fact of the establishment of picketing (even if followed by cessation of work by employees of an employer not involved) does not of and by itself establish violation of 29 U.S.C. § 158(b) (4). In the earliest of these cases, Mr. Justice Frankfurter pointed to the NLRB's Moore Dry Dock case[4] test:

"The Moore Dry Dock case, supra, laid out the Board's new standards in this area. There, the union picketed outside an entrance to a dock where a ship, owned by the struck employer, was being trained and outfitted. Although the premises picketed were those of the secondary employer, they constituted the only place where picketing could take place; furthermore, the objectives of the picketing were no more aimed at the employees of the secondary employer—the dock owner— than they had been in the Pure Oil and Ryan cases. The Board concluded, however, that when the situs of the primary employer was 'ambulatory' there must be a balance between the union's right to picket and the interest of the secondary employer in being

2. 61 Stat. 136 (1947), as amended, 29 U.S.C. §§ 141–187 (1964).

3. 73 Stat. 519 (1959).

4. Sailors' Union of the Pacific, 92 N.L. R.B. 547 (1950).

free from picketing. It set out four standards for picketing in such situations which would be presumptive of valid primary activity: (1) that the picketing be limited to times when the situs of dispute was located on the secondary premises, (2) that the primary employer be engaged in his normal business at the situs, (3) that the picketing take place reasonably close to the situs, and (4) that the picketing clearly disclose that the dispute was only with the primary employer. These tests were widely accepted by reviewing federal courts. See, e. g., Labor Board v. Service Trade Chauffeurs, 191 F.2d 65 (C.A.2d Cir.); Piezonki v. Labor Board, 219 F.2d 879 (C.A.4th Cir.); Labor Board v. Chauffeurs, Teamsters, 212 F.2d 216 (C.A.7th Cir.); Labor Board v. Local 55, 218 F.2d 226 (C.A.10th Cir.)." Local 761, International Union of Electrical Radio & Machine Workers v. National Labor Relations Board, 366 U.S. 667, 677, 81 S.Ct. 1285, 1291, 6 L.Ed.2d 592 (1961).

The cases we have cited and the *Moore Dry Dock* test make clear that ultimately a determination of the objective of the union's activity must be made.

The clinching evidence as to the objective of defendants' activities in the instant case was clearly the testimony of plaintiff's witness McFerran pertaining to a phone call from a union representative named Wode:

"A. He told me that he had notice that Mr. Gunderson or workers employed by Mr. Gunderson were still working on the Crums Lane project, and he further stated that it was his impression that we were going to fire Gunderson off of the job and give the work to McClain.

"I then explained to Mr. Wode that I had a contract with Gunderson Electric Company, Incorporated, that there was no way that I could legally fire the man off of the job without violating my contract with him.

"Q Now, what did Mr. Wode say about that, if anything?

"A Mr. Wode then said in that event he could only go ahead and put some pickets out there on the job and possibly print some handbills to distribute through as many people as possible stating that the work, the electrical work, on the job was being done by nonunion electrical workers. * * "

Defendants sought at trial to counter this testimony pertaining to the object of the picketing by contrary evidence of their own. But they did not call Wode. Nor did plaintiff, although the record indicates Wode was in the courtroom during the trial.

But at oral argument of the case before the jury by plaintiff's counsel Barker, the following occurred:

MR. BARKER: "George Wode has never got on this stand. The reason he didn't get on the stand is because I took his deposition, it took me 53 pages to do it, but I finally got him to admit the purpose of the picketing was to get Gunderson off of the job. That substantiates and corroborates what Mr. McFerran said. 'How are we going to get this guy off the job?'

"MR. ISENBERG: That's objected to, if Your Honor please. That's not before the Court.

"BY THE COURT: Well, the jury will remember the testimony in this regard.

"MR. ISENBERG: What Mr. McFerran said, yes, but not what Mr. Wode said.

"MR. BARKER: Well, Mr. McFerran said—

"MR. ISENBERG: (Interrupting) We'll let him comment about what Mr. McFerran said."

Appellee concedes that his reference to the deposition was clearly error (See Rule 26, Fed.R.Civ.P.). While counsel may resort to reason for deductions in his argument, he must restrict himself to the record for the facts. Chesapeake & Ohio Ry Co. v. Richardson, 116 F.2d 860 (C.A.6 1941). Certainly

a deposition not introduced and admitted in evidence at trial may not be relied on in argument of the case. Worsham v. Duke, 220 F.2d 506 (C.A.6, 1955).

■ The appellee argues that we should hold on this record that the error did not affect "substantial rights" of defendant, citing Rule 61, Fed.R.Civ.P. Under the factual and legal situation we have set forth above, we do not see how we can affirm on this basis. The effect of the argument was to advise the jury that the defendant's business agent had, in a deposition not read to the jury, conceded the illegal object of the defendant's conduct. Clearly the plaintiff cannot properly get such a concession so vital to this case before a jury by argument where he has not elected to offer the deposition or call the witness.

In Twachtman v. Connelly, 106 F.2d 501 (C.A.6, 1939), this court said:

"Counsel should not introduce extraneous matter before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." Twachtman v. Connelly, supra, at 508–509.

Reversed and remanded for new trial.