Henry B. REBMANN, Jr., Administrator D.B.N.C.T.A. of the Estate of R. Harland Horton, Deceased, Appellee,

v.

Albert A. CANNING, Appellant.

No. 16626.

United States Court of Appeals Third Circuit.

Argued Nov. 3, 1967.

Decided Feb. 26, 1968.

Francis E. Shields, Pepper, Hamilton & Scheetz, Philadelphia, Pa. (John J. Cannon, Philadelphia, Pa., on the brief), for appellant.

William C. Massinger, Sugarman, Massinger & Weiss, Phoenixville, Pa., for appellee.

Before McLAUGHLIN, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

On September 26, 1961 there was a collision between two automobiles in the intersection of State Highway 663 with Swamp Pike, a county road, in the Township of New Hanover, Montgomery County, Pennsylvania. R. Harland Horton was alone in his car and proceeding west on Swamp Pike. Albert A. Canning, also alone, was driving his machine north on Highway 663. Mr. Horton was badly injured and died as a result about five hours after the accident. This suit was brought on behalf of his widow and his estate, against Canning. The complaint alleged that the accident was caused by the negligence of the defendant. The latter in his answer denied he was negligent and as an affirmative defense, said "The plaintiff was negligent and such negligence contributed materially to the accident." The action was tried in November 1965. It resulted in verdicts in favor of the plaintiff administrator.

Defendant appealed from the resultant judgment.

At the time of trial the defendant was suffering from a stroke and unable to appear. There were no eye witnesses produced by either side. State trooper Stone who came to the scene shortly after the accident and a former State trooper, then in private employment, who arrived prior to Stone, were the only witnesses on behalf of plaintiff regarding the accident. There were no witnesses called by the defense.

The ex trooper had taken some pictures of the cars, roadway, etc. These were marked into evidence. Trooper Stone as a witness shown one of said photographs, was asked on direct:

"Were you able to determine, Officer, again looking at P–6, whether the skid marks in question shown by this photograph were made by either of the vehicles involved in the accident?" He had answered in part "Yes sir; they were—", when the defense attorney objected, saying "To my mind, your Honor, that is not investigation of an accident; that is rendering expert opinion for purposes of a law suit." The Court, holding the witness qualified, permitted him to answer a rephrased question to the same effect. Stone was then asked another rephrased question:

"Based on your expertise in investigating automobile accidents as a state police officer, and further based on your experience at the scene of this accident, and your conversation with the defendant, do you have an opinion as to the cause of this accident?"

The original of that query had been objected to because as the defense attorney argued "It is the ultimate fact that this jury is asked to determine, and without any eyewitness account of what actually occurred, I submit there is insufficient basis to support an opinion."

The rephrased question was objected to "So the record may be consistent, my objection also goes to the rephrased question."

The Court said, "Naturally. Exception granted" and allowed the trooper to answer the question, which he did saying: *"The accident was caused by Mr. Canning's failure to stop at the stop sign."* (Emphasis supplied).

The trooper testified at considerable length regarding his other conclusions about the accident. For example, on redirect there were the following questions and answers:

"Q. Trooper Stone, would the direction in which the vehicles traveled after impact have any bearing upon your determination as to whether or not the Horton car was speeding?

A. There again we are bringing into this weight and everything else; *I would have to form the opinion that he was not speeding.*

Q. But why? In so far as that one factor is concerned, the direction that the vehicles traveled after impact?

A. The Horton car was carried, or pushed by the Canning car to such a degree that *I would have to admit that he was going at the greater speed,* and that he had the bigger car, and he carried him more or less in the direction in which he was going—almost directly." (Emphasis supplied).

At the end of the plaintiff's case the defense moved to strike the testimony of the trooper giving his opinion of the cause of the accident. In addition it was requested that, if the motion was granted, a verdict be directed against the plaintiff on the ground that Stone's remaining evidence "was insufficient to support a verdict, particularly in the absence of any evidence as to the speed of the other vehicle or the movements of either vehicle prior to the accident." The Court reserved decision and the next morning struck that portion of the trooper's testimony giving his opinion as to the cause of the collision. The balance of the motion was not allowed.

Appellee asserts that the admission of the trooper's opinion that the accident was caused by the failure of the defendant to stop at the stop sign, was dis-

cretionary and proper. Further he contends "Assuming arguendo, admission of the expert opinion was an abuse of discretion, there was no substantial prejudice to defendant and such error was harmless error."

This action is in the Federal Court by reason of diversity of citizenship of the parties. The accident happened in Pennsylvania. Admittedly the law of that state governs the substantive issues.

When the question of the trooper testifying as an expert was first raised the trial judge had commented that he was well acquainted with the training of state policemen and felt " * * * that the Court can take judicial notice of the fact that they are trained sufficiently to investigate this kind of an accident thoroughly." As we have seen the trooper was thereafter allowed to and did give his conclusions regarding what had happened, featured by his startling statement that "The accident was caused by Mr. Canning's failure to stop at the stop sign." The Court, in concluding the liability portion of the charge said:

> "Therefore, ladies and gentlemen of the jury, if you find that the defendant, Mr. Canning, failed to observe the stop sign, the defendant was negligent and is thus liable in damages; and therefore, if you should find that there was negligence on the part of the defendant which caused the death of Mr. Horton, then you shall find responsibility on the part of the defendant for the accident, and then you must determine the damages suffered by the plaintiff in this case as a result of Mr. Horton's death, sustained through the fault of the defendant." (Emphasis supplied).

The identical problem was present in Gordon v. Robinson, 210 F.2d 192, 194 (3 Cir. 1954) though that trial was cluttered up with collateral matters that had to be resolved first. Gordon involved a collision in Pennsylvania between a passenger automobile and a motor truck. A Pennsylvania state trooper arrived at the critical area after the accident. He was

a witness in the trial of the resultant action. He testified as to various conclusions he had formed regarding the accident and its causes, including his opinion that it had been plaintiff's fault and that no improper driving by defendant had been indicated. This Court held that "The testimony was grossly improper. In effect the state policeman, in full uniform was permitted to give the jury his conclusions on the basic issues of the litigation, the very issues they were there to decide."

In Giffin v. Ensign, 234 F.2d 307, 314 (3 Cir. 1956) similar circumstances again appeared. We said:

> "The appellants also contend that the proffered testimony of a State police officer who investigated the accident with regard to the point of impact on the vehicles in the collision was improperly excluded. But since the officer did not see the accident, the exact place of impact was clearly a matter of opinion and further one on which the jury was capable of drawing its own conclusions."

The Pennsylvania decisions strongly support the above view. In Brodie v. Philadelphia Transp. Co., 415 Pa. 296, 203 A.2d 657 (1964), a police officer connected with the Accident Investigation Division arrived at the scene of a collision between a street car and automobile after the event. As a trial witness he gave his observations of roadway physical markings in the critical area, his opinion of the speed of the street car and his conclusions that at the time of the accident it had been traveling at a speed rate of 35 miles an hour, had not been under control and had been traveling too fast for the existing conditions. There had been four suits heard in that trial. The Pennsylvania Supreme Court ruled that the officer's improper evidence " * * * tainted the verdict in all actions and could well have been the basic factor influencing the jury's determination of the liability question. It was sufficiently prejudicial to warrant a retrial." In Smith v. Clark, 411 Pa. 142, 147, 190 A.2d 441, 443

(1963) the same Court passed upon the trial evidence of another police officer wherein he gave as his opinion, as the Court noted, that the cause of a highway automobile accident "was failure to *react* to make a left curve of the highway * * *." The Court held "This conclusion was for the jury and not the witness. Opinion evidence, under the circumstances, was totally unnecessary, inadmissible and opened the door to the highly prejudicial response. * * * The witness's answer was tantamount to saying that the driver's condition caused him *not* to make the curve. Since the police officer did not view the actual occurrence, his opinion was speculative and an invasion of the jury's exclusive prerogative." (Emphasis supplied by the Supreme Court).

█ It is impossible to agree with appellee that the admission of the trooper's accident conclusions was harmless error. Starting with the powerful approval of his expert qualifications in the special field, the trooper proceeded to dispose of the total accident causation in a single sentence, "The accident was caused by Mr. Canning's failure to stop at the stop sign."

After the testimony had been closed and the motion to strike the trooper's testimony granted in part by the striking of the above conclusion, the Court so advised the jury saying "Under the law you must not consider such testimony in reaching your verdict." A little later in his charge, as above mentioned, the judge instructed the jury " * * * if you find that the defendant Mr. Canning, failed to observe the stop sign, the defendant was negligent and thus liable in damages; * * *." That sole determinative test by which the jury was forced to decide for or against the defendant had already been applied by the trooper who, from the single element of defendant's failure to stop at the stop sign had jumped to the all inclusive opinion that in so doing the defendant caused the accident. The trooper's stricken answer had categorically covered the jury's test question. That answer had not been

removed from the jury's consideration because it was speculative or an invasion of the jury's exclusive prerogative or opened the door to highly prejudicial response. It was stricken only because the trooper was not present when the accident happened. It is not common sense to assume that the jury, undoubtedly strongly impressed by the trooper's testimony, were able to eradicate from their minds his pronouncement of defendant's full responsibility for the collision.

The law is in accord with this view. There are any number of trials where readily curable inadvertent statements or misstatements, procedural and other mistakes occur which are effectively disposed of by explanation and directions to the jury. The incident before us is not one of those. By the time the jury received the case for its consideration and decision the whole liability issue depended entirely on whether it found the defendant had "failed to observe the stop sign". The trooper, backed by the solid prestige accorded him as an expert in this field, had already testified that in his sworn opinion defendant had failed to stop at the sign and had so caused the accident. Beck v. Wings Field, Inc., 122 F.2d 114, 115 (3 Cir. 1941) dealt with the type of situation before us. In that trial an expert witness was asked, "Are you familiar with the scene of Mr. Beck's accident?" The witness said "Yes sir, I cracked up in the same ditch." The trial judge acted with the utmost promptness in directing the jury to disregard the statement and saying "That has nothing to do with this case." Both sides agreed that the gratuitous remark was improper. This Court held:

"The question, therefore, with which we have to deal is whether the prejudicial and harmful effect of the volunteered remark could possibly be eradicated from the jury's thinking while deliberating upon the case. If it could, then no harm was done and the trial court's refusal to withdraw a juror was not error, for the learned trial judge did everything possible in an effort to have the jury banish from their minds

the thought which the witness had improperly injected. But, after careful consideration, we are of the opinion that this was not legally sufficient. The only way that the defendant can be protected against the strong possibility of harm from the improper occurrence at trial for which it was in no way responsible is by having a new trial."

In Rosa v. City of Chester, Pa., 278 F.2d 876 (3 Cir. 1960) plainly improper evidence detrimental to plaintiff's decedent was developed from a witness. The Court made a statement about the evidence for the record saying " * * * I am ruling that out of the case completely * * *." The jury returned a verdict in favor of the plaintiff in the sum of one dollar. This Court considered that the testimony standing alone was prejudicial and instructions to disregard it could not cure the error, that it was not an isolated unresponsive statement but developed by the defendant's attorney over strong objection and therefore more difficult to erase, that the instruction was not as all encompassing as it should have been, that under all the circumstances it was doubtful if the instruction was helpful and finally that the verdict indicated the likely effect of the erroneously admitted testimony. A new trial was granted as to damages only.

Hamory v. Penna. etc. R.R. Co., 222 Pa. 631, 634, 72 A. 227, 228 (1909), perhaps the leading Pennsylvania opinion on this point, details the rule precisely: "Where evidence has been improperly admitted which tends to prejudice the minds of the jurors, the error is not cured by an instruction in the charge to disregard it or to withdraw it from their consideration; * * *." See also McJunkin v. Kiner, 157 Pa.Super. 578, 581, 43 A.2d 608 (1945).

■ Appellant's second point concerns his requests to charge. Under the scant facts we have of this intersection highway accident we hold that appellant was plainly entitled to have charged his requests covering contributory negligence and the duty of care of a driver on a through highway upon entering an intersection, with particular reference to the Pennsylvania Vehicle Code, 75 P.S. § 1014(c).

■ Finally, the rightness of the plaintiff's actuarial testimony is strongly challenged by appellant. While the evidence does lack clarity, it is founded upon the actuary's calculations, including his conclusion that the decedent had a work life expectancy of 5.9 years. It seems to us that the evidence, for what it was worth, was admissible under the liberalizing Brodie decision, supra. That opinion, 415 Pa. p. 302, 203 A.2d p. 660, does authorize "the use of accepted tables or the testimony of a qualified expert, who can compose the proper computations." As there must be a new trial more extensive exploration of the plaintiff's damage proof plus perhaps defense affirmative testimony with reference to this branch and proper requests to charge should help make clear to the jury the damage guide lines; the types of allowable proof, their weight, etc.

The judgment of the District Court will be reversed and the case remanded for a new trial on the merits.