Douglas F. WARNER, Plaintiff-Appellee,

v.

Donat ROSSIGNOL, Defendant-Appellant.

No. 75–1403.

United States Court of Appeals,
First Circuit.

Heard March 4, 1976.
Decided July 22, 1976.

Richard B. Sanborn, Augusta, Maine, for appellant.

Julius B. Levine, with whom Frederick E. Levine and Levine, Brody & Levine, Waterville, Maine, were on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This case began as a run-of-the-mill tort action, arising out of a collision between a tractor and a car on a country road in Oakland, Maine on August 1, 1972. Surprisingly enough, however, it has already required the attention of two juries (one on the question of liability and the other on the issue of damages), two district judges, as well as this court on a previous appeal.

The earlier history of this case was traced in our first opinion, *Warner v. Rossignol,* 513 F.2d 678 (1st Cir. 1975), and need not be repeated.[1] Pursuant to the directions given in the first opinion, the district court held a hearing and on May 28, 1975, ruled that plaintiff was in fact justified in withdrawing from the settlement agreement because of the defendant's overly long delay in paying the agreed upon sum. That preliminary determination having been made, a jury trial was then held limited to the issue of damages. The jury awarded damages of $70,000, and the court entered judgment for that amount. This appeal is from the verdict on liability and also from the verdict on the question of damages.

In considering the voluminous record in this case, one fact strikes us more than any other: at the damages trial plain-

tiff's attorney persisted in going beyond the pleadings and the evidence, embroidering upon plaintiff's head injuries and the (completely speculative) consequences which might flow from those injuries. He did so even after repeated warnings from the judge and in a manner which we think was calculated to inflame the jury. In our judgment this conduct was so prejudicial as to require a new trial on the issue of damages.

We briefly outline the context of this prejudicial conduct, although the full impact of what transpired cannot be appreciated without reading the record in toto. Towards the end of the trial on damages, the deposition of Dr. Edward P. Richardson, one of plaintiff's expert witnesses, was read to the jury.[2] Immediately after the reading of the deposition, part of which referred to possible permanent brain injury and the possibility of epilepsy and seizures in the future, the judge instructed the jury:

"[T]here is no evidence in this case from which it can be inferred that the plaintiff has any probability of being subjected to any kind of epilepsy or seizures, and any portion of that deposition that was read to you that suggests that the plaintiff might be subjected to seizures is ordered stricken, and you are to totally disregard it."[3]

---

1. For the sake of clarity, we briefly recall some of the principal chapters in that saga of a settlement manqué:

   March 1, 1974: district court entered judgment on the jury's verdict of liability on defendant's part, with "damages to be determined by the court after further jury trial."

   March 13, 1974: district court was notified that the parties had arrived at a settlement concerning damages.

   May 30, 1974: defendant tendered his check for the sum agreed upon, but plaintiff refused to accept it on the ground that the settlement was terminated by defendant's refusal to pay at an earlier date.

   June 21, 1974: district court ordered the plaintiff to accept the tendered sum.

   April 7, 1975: on plaintiff's appeal, this court remanded the case to the district court "for a hearing to determine whether or not defendant's conduct was such as to justify plaintiff's attempted withdrawal [from the settlement agreement]."

2. It is, unfortunately, not clear from the record exactly how much of Dr. Richardson's deposi-

tion was read to the jury, since the court reporter did not record the reading. It is nevertheless obvious from comments made by the court and by attorneys for both parties that at least some of Dr. Richardson's statements about epilepsy and seizures did reach the jury's ears.

3. Plaintiff's attorneys tried to convince the trial judge that there was basis in the testimony of Dr. Richardson for the proposition that plaintiff could develop epilepsy and seizures in future years as a result of the accident. The court was equally adamant in its rejection of that thesis as the following dialogue (in the absence of the jury) reveals:

   "MR. JULIUS B. LEVINE [attorney for the plaintiff]: [O]n page 30 of the deposition Dr. Richardson testified that this very gentleman, Doug Warner, anyone who had a brain contusion and concussion, as he had, as already in evidence in Seton Hospital records, could in a matter of years, within two, perhaps five, even ten years, come to have very serious epilepsy and seizures.

Later, on the same evening of trial, in the course of a lengthy discussion with counsel outside the presence of the jury, the judge stated:

"I should have read the deposition beforehand. Both counsel have taken far too much time. I was trying to save time. I will take the responsibility for not reading the deposition. But it is clear to me, now that I have read it, that Mr. Levine, [attorney for plaintiff] you stepped over close to the line in getting into this deposition at all relative to petit mal seizures, and I think that it was prejudicial."

The judge also expressed his belief that his instruction had been adequate to cure the potential prejudice.

At a bench conference, just prior to closing arguments, the judge—prompted by an objection of defendant's attorney—stated: "[T]he conclusive evidence here is, . . . there is no brain contusion. All you had was a simple head injury." And the judge cautioned plaintiff's attorney not to exaggerate the injury to the brain. Nevertheless, in the course of his closing argument to the jury, plaintiff's attorney chose to harp on the theme of brain injury:

"The best thing that ever happened to Doug is he survived that accident. And I know he joins me in the words I have said in tribute to those doctors who took care of his head injury, and he wouldn't criticize them for nothing, paying so much attention to his knee and his mouth. I'm sure he would thank them, and as I would

if it had been my boy, for focusing on his brain.

"Dr. Rodriguez found he had amnesia, that is, you can't remember. It happens from brain injuries.

". . .

"Also, because he was unconscious, all the doctors testified in the medical records of Seton Hospital, and even Dr. Guite's bills, and other places, all show what is called a brain concussion. There is a brain injury. There's no doubt about that. And I think you heard Dr. Richardson's deposition in part, also, mention a brain injury."

When defendant's attorney objected to this "continuous reference to brain injury", the judge sustained the objection and instructed the jury that there was no evidence of any permanent brain injury. He repeated that instruction in his final charge to the jury.

We have carefully considered the whole record to determine whether the prejudicial effect of the emphasis given to plaintiff's head injuries was adequately counterbalanced by the judge's curative instructions, and we conclude that it was not. *Koufakis v. Carvel,* 425 F.2d 892, 904 (2d Cir. 1970); *Rebmann v. Canning,* 390 F.2d 71, 74–75 (3d Cir. 1968). Given the layman's general awareness of the dire consequences which can flow from injuries to the head or brain, the repeated suggestions in plaintiff's closing argument that he had suffered something more than "a simple head injury"[4]

"THE COURT: He didn't testify in terms of reasonable medical probability.

"MR. JULIUS B. LEVINE: Yes, he did.

"THE COURT: No, he did not.

"MR. JULIUS B. LEVINE: Perhaps I am wrong. I haven't read the deposition, as I say, Your Honor, but my recollection from his testimony is he talked about very specific real cases where this had happened, not as to this gentlemen, but as to other patients."

4. The quoted words are those of the judge. They accord with plaintiff's own statement of his personal injuries in his complaint (never amended):

"As a result, Plaintiff was thrown violently about in his said motor vehicle, received lacerations and bruises on his head and in his mouth and to his lips, and a severe blow to

his right knee and was otherwise injured, was prevented from transacting his business as a professional member of a marching musical band and will be prevented permanently from performing his business as a professional marching musician because of these injuries to his knee and mouth and lips, suffered great pain of body and mind and will permanently so suffer in the future, suffered permanent impairment to his right knee, lips and mouth, incurred expenses for medical attention and hospitalization in the sum of Ninety-five Hundred Dollars ($9,500.00) and will incur such medical and hospital expenses in the future in the sum of Twenty Thousand Dollars ($20,000.00)."

undoubtedly strongly impressed the jury. While the "trial judge did everything possible in an effort to have the jury banish from their minds the thought which [plaintiff's attorney] had improperly injected . . . we are of the opinion that this was not legally sufficient." *Beck v. Wings Field, Inc.,* 122 F.2d 114, 117 (3d Cir. 1941), quoted in *Rebmann v. Canning, supra* at 74–75, and that there is a strong likelihood that the repeated references to brain injuries had "a profound effect on the jury's fact-finding." *Hiram Ricker & Sons v. Students International Mediation Society,* 501 F.2d 550, 554 (1st Cir. 1974).[5] We believe that "[t]he only way that the defendant can be protected against the strong possibility of harm from the improper occurrence at trial for which it was in no way responsible is by having a new trial." *Beck v. Wings Field, Inc., supra* at 117. *See also Koufakis v. Carvel, supra* at 905. While it is only with reluctance that we order a new trial in a case that has already consumed a great deal of time and judicial energy, our decision to do so here is made easier by the fact that plaintiff's attorney failed to adhere to the spirit of the court's repeated warnings as to the dangers of over-emphasizing the extent of plaintiff's brain injuries.

Most of defendant's remaining complaints about the trial on damages may be more quickly disposed of. Because there is to be a new trial as to this issue, we assume that errors like the use of the word "insure" by plaintiff's attorney in his argument to the jury are unlikely to occur again. As for plaintiff's introduction of evidence concerning injuries to the left knee, we caution counsel in the new trial to restrict themselves to the scope established by the pleadings. *See Niedland v. United States,* 338 F.2d 254, 257 (3d Cir. 1964); *Daniels v. Thomas,* 225 F.2d 795, 797 (10th Cir. 1955), *cert. denied,* 350 U.S. 932, 76 S.Ct. 303, 100 L.Ed.2d 815 (1956); *Bose Corp. v. Consumers Union of United States, Inc.,* 57 F.R.D. 528, 530 (D.Mass.1973).

In addition, we would comment that at the new trial the attorney for the carrier of plaintiff's uninsured motorist coverage should not be introduced to the jury or seated within the bar in a way which might suggest that he represents an insurer of defendant. Defendant, who in fact carried no insurance on his tractor and hay bailer, has the right to conduct his defense unhampered by the presence of a third party whom the jury might presume represented his insurer.

As for the trial on liability, where the jury found defendant fully liable, we find no reversible error and believe that there was sufficient evidence to support the verdict.[6] Defendant argues that the evidence before the jury required it to conclude that plaintiff was contributorily negligent because of the speed at which his car was traveling before the accident and because of his lack of control of his vehicle. Our review of the evidence, however, convinces us that the jury had before it sufficient evidence to conclude that defendant was solely liable. We also reject defendant's contention that the district court committed reversible error when it refused to allow a police sergeant to testify as an

---

**5.** While we refrain from ruling as a matter of law that the damages awarded ($70,000.00) are excessive in the light of the evidence, *see La Forest v. Autoridad de las Fuentes Fluviales de Puerto Rico,* 536 F.2d 443 (1st Cir., 1976) we nonetheless tend to think that they are quite high; and we suspect that the error concerning brain damage might be a factor in this inflation.

**6.** Defendant moved in the district court for a new trial as to both liability and damages. Judge Bownes, who presided at the trial on damages, denied the motion insofar as it pertained to damages. Judge Gignoux, who had presided at the liability trial but subsequently disqualified himself from participation in the damages phase (although our opinion did not require him to do so), denied the motion for new trial on the question of liability. We reject defendant's argument that, because of his disqualification, Judge Gignoux could not properly pass on this motion. His disqualification was explicitly limited to the issue of damages, and in no way affected his capacity to rule on the motion for a new trial on liability, although his action in this regard was necessarily deferred until after the entry of judgment on the issue of damages. *Warner v. Rossignol,* 513 F.2d 678, 684 n.3 (1st Cir. 1975).

expert on the relationship between the skid marks of plaintiff's car and the speed at which it was traveling. The court excluded this testimony because defendant, in responding to plaintiff's interrogatories, had not listed the sergeant as an expert witness. Such matters are within the sound discretion of the district court, and we cannot say that there was an abuse of discretion in this case. *See Taggart v. Vermont Transportation Co.*, 32 F.R.D. 587, 588 (E.D.Pa.1963), *aff'd*, 325 F.2d 1022 (3d Cir. 1964).

The judgment on the question of liability is affirmed. A new trial is to be held on the issue of damages. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 454, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *Caskey v. Village of Wayland*, 375 F.2d 1004, 1009–10 (2d Cir. 1967).

*So ordered.*