David A. BRYANT, Plaintiff, Appellant,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant, Appellee.

No. 81–1116.

United States Court of Appeals,
First Circuit.

Submitted Sept. 10, 1981.

Decided Feb. 18, 1982.

Evan T. Lawson, James F. O'Brien, and
Lawson & Wayne, Boston, Mass., on brief
for plaintiff, appellant.

Peter L. Brown and Atkins & Brown,
Boston, Mass., on brief for defendant, ap-
pellee.

Before ALDRICH, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Bryant appeals from a judgment entered on a jury verdict awarding him $1,200 damages and from the district court's denial of his motion for a new trial. He argues that the defense engaged in improper tactics, particularly in closing argument, and that the district court erred in admitting into evidence a 1972 medical report and the amount of some of his medical bills.

Bryant, a former spare board passenger trainman for Consolidated Rail Corporation (Conrail), brought this action for damages against Conrail under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. He claimed that as a result of a train collision on the evening of December 3, 1976, he was thrown 30 feet and suffered injuries particularly to his left arm and his neck which caused him to miss 19 months of work. Bryant sought damages for pain and suffering, lost earnings, and diminished earning capacity.

The evidence presented at trial included testimony from Bryant and from Henry J. Stoltmann, a neurosurgeon who treated Bryant, and various medical reports.[1] The trial lasted three days. After brief deliberations, the jury returned a unanimous verdict for Bryant, awarding him damages for $1,200. Bryant moved for a new trial on the grounds that the damages award was unreasonably low and that the verdict was clearly against the weight of the evidence and was the result of prejudice and reference to matters not in evidence.

The district court denied the new trial motion. The court found "that the verdict was supported by the evidence and was not against the manifest weight of the evidence, and that plaintiff has failed to support his allegations that the jury's award was the result of prejudice, reference to matters not in evidence and consideration by the jury of matters not in evidence."

The district court also ruled that Bryant's objections to defense counsel's conduct were "barred for failing to request rulings, curative instructions, or other action by the court before the jury retired to deliberate."

"[W]here the trial judge has denied . . . a new trial motion, it is 'only in a very unusual case that we will reverse such a ruling as an abuse of discretion.'" Hubbard v. Faros Fisheries, 626 F.2d 196, 200 (1st Cir. 1980), citing Sears v. Pauly, 261 F.2d 304, 309 (1st Cir. 1958). Bryant argues on appeal that his failure to object to the alleged misconduct of Conrail's counsel does not bar him from seeking a new trial because the district court has a duty "to consider the prejudicial effect of the opposing attorney's conduct even in the absence of an objection." He claims that if he had objected to all the alleged misconduct, he would have prejudiced his own case by making it appear that he was "trying to conceal facts from the jury." Bryant particularly complains about Conrail's closing argument, including defense counsel's reference to "health insurance," and his assertions that Bryant "could not be found" (during the 19 months he was out of work) and that Bryant had a history of not going to work.

We find no merit in Bryant's argument that his failure to object should be excused. While it may be true that sometimes "the protest will only serve to emphasize the evil," Brown v. Walter, 62 F.2d 798, 799–800 (2d Cir. 1933) (L. Hand, J.), this was not a case where such was bound to occur. Bryant's attorney had ample opportunity to speak to the court outside the jury's presence. The judge met with counsel prior to closing argument to review requests for instructions and to inform them of the instructions he planned to give. Following the closing argument and the charge to the jury, the district court again met with counsel to inquire if they had any objections to the charge. Bryant's attorney did not raise or discuss the present allegations of misconduct with the judge at these

---

1. Benjamin LeBarron, a Conrail employee, was also called as a witness; however, he provided no substantive testimony.

or any other times although he could easily have done so.

Bryant cites several cases from this and other circuits to support his argument that Conrail's conduct requires a new trial. These are distinguishable both because appropriate objections and requests for curative instructions were lodged and because the alleged misconduct was more clearly egregious. *See, e.g., Warner v. Rossignol,* 538 F.2d 910, 912 (1st Cir. 1976) (exaggeration of "simple head injury" even after repeated warnings from the trial judge); *Draper v. Airco,* 580 F.2d 91 (3d Cir. 1978) (repeated inappropriate references to defendant's wealth and prejudicial, vituperative and insulting references to opposing counsel); *Koufakis v. Carvel,* 425 F.2d 892 (2d Cir. 1970) (counsel references to "mafia," use of slanderous and baseless epithets despite objections from opposing counsel and admonitions by the trial judge);[2] *Rommel-McFerran Co. v. Local Union No. 369, International Brotherhood of Electrical Workers,* 361 F.2d 658 (6th Cir. 1966) (use in closing argument of contents of deposition never admitted into evidence, although deponent in courtroom). *Mileski v. Long Island Rail Road Co.,* 499 F.2d 1169, 1174 (2d Cir. 1974), also cited by Bryant, is pertinent, but it does not support his argument. In that case the court affirmed the verdict, stating "Since no objection was made in the present case to the opinions and suggestions expressed by plaintiff's counsel . . . and since no request was made for instructions . . . the award must stand. Counsel's summation was not so outrageous, or the trial judge's failure to caution the jury with respect to it so fundamental an error, as to mandate reversal." *Id.,* at 1174. The same reasoning applies here.[3]

Bryant also argues that the district court erred in admitting a 1972 medical report.

In its cross-examination of Bryant, Conrail asked him about other injuries and medical absences from work. Bryant answered that he had taken some time off for an ingrown toenail. Counsel for Conrail then asked, "Did you ever have to take time off because of your teeth?", and Bryant answered, again without comment from his counsel, "Oh, yes, sir. I had trouble with my wisdom teeth at one point." When Conrail attempted to develop this line of questioning further, Bryant's counsel objected, but the court overruled the objection. In the course of this further questioning, Conrail sought to introduce a 1972 medical report stating that Bryant "has had trouble with his teeth [—] out 35 days." Bryant's counsel objected "on the ground of relevancy." Conrail's counsel argued that the evidence was relevant to the defense claim that Bryant had a history of taking "excessive time off." The court overruled the objection and allowed the evidence in.

■ On appeal, Bryant argues that the admission of the report violated Fed.R.Evid. 404, which precludes admission of "[e]vidence of a person's character or a trait of his character . . . for the purpose of proving that he acted in conformity therewith on a particular occasion," Fed.R.Evid. 404(a), and of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that he acted in conformity therewith," Fed.R.Evid. 404(b). There is some force to this argument, although a countervailing argument can be made. Under Rule 404(b), evidence of prior acts, while not admissible to show character, may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Arguably the tooth incident went to plaintiff's intent or motive in not returning to work, or to

---

**2.** Bryant cites language from *Koufakis,* 425 F.2d at 901, to support his argument that the district court erred in refusing to consider his claim of misconduct in the absence of an objection. However, this passage is dicta because counsel for Carvel consistently objected. Moreover, the misconduct in *Koufakis* was more pervasive and extreme.

**3.** Conrail refers at page 3 of its brief in this court to purported facts concerning Bryant's subsequent employment record, which are not in the record and in no way a proper subject of reference in its brief. Whether this reflects excessive zeal or a deliberate disregard of established rules, we find such conduct unacceptable and warn counsel against its repetition.

show a plan, scheme, design, or course of conduct. *See Hammann v. Hartford Accident and Indemnity Co.*, 620 F.2d 588 (6th Cir. 1980) (proof of prior fires admissible in insurance recovery action); *United States v. Walls*, 577 F.2d 690, 696–97 (9th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978) (proof of default on prior loans admissible to show lack of good faith in fraud action). *But cf. Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963) (error to admit reports of prior injuries and claims in order to establish malingering); *Nepple v. Weifenbach*, 274 N.W.2d 728 (Iowa 1979) (error to admit evidence of prior settlements and recoveries).

We do not think it necessary to resolve this issue, however, since plaintiff's counsel never raised the Rule 404 character issue before the district court, as required by Fed.R.Evid. 103(a)(1). The only stated ground for objection was "relevancy," to which defendant's counsel replied, with at least superficial plausibility, that the evidence was relevant to the defense claim that Bryant had a history of taking excessive time off. Bryant's counsel did not argue that even if relevant, the evidence was inadmissible character evidence, nor that, if not character evidence, its prejudicial aspects outweighed its probative value. We cannot say that the tooth episode was completely irrelevant. Much of this trial was devoted to probing plaintiff's reasons for not having made his claim promptly and for having stayed away from work so long. A past tendency, innocent or otherwise, to magnify injuries, if in fact such existed, would be of direct interest to those considering such evidence. *See* Fed.R.Evid. 401. If the record in question was inadmissible, it was not for lack of relevancy in any ordinary sense but because it went contrary to one or more other evidentiary principles.

Thus we think counsel had a duty to do more than question the record's relevance. An objection based on the character rule must be more specific.[4] This is not to say that counsel had to cite to the specific rule or use any particular form of words, only that he should have said enough to alert the court to the theory now being propounded.

Even were we to assume, moreover, that the objection was adequate, and the evidence otherwise inadmissible, we would not be disposed to grant a new trial. There was a large body of evidence suggesting that plaintiff was not injured as seriously as he claimed. He testified that the problem with his elbow did not show up until two months after the accident and that he never reported it to Conrail. The notes of the doctor who treated him immediately after the accident and for more than two months afterward refer nowhere to pain or problems with his left elbow. One doctor characterized the problem as tendonitis, or "tennis elbow." On direct examination, Bryant testified that the pain did not occur every day and that he stayed out of work to find out what was wrong (suggesting that such pain as he did experience was not in itself the cause of his absence from work). Finally, two doctors who described the injury as "mild" advised Bryant to return to work in December 1977 and January 1978, but he did not do so until July 1978, more than six months later. The thrust of the defense was that this evidence showed Bryant's injury to be so slight that he must have been malingering. The cumulative effect of this other evidence—all relating directly to this injury and to the possibility of malingering—was such that the medical report was but cumulative of other evidence and of a theory of defense already before the jury.

■ Prior to trial the parties stipulated that "[t]he question of the amount of

---

4. Judge Weinstein states that an objection on the grounds of relevancy is insufficient except for the purpose of raising the issue of whether the evidence is relevant according to the general rule stated in Fed.R.Evid. 401:

> All other objections pertaining to the admission of evidence, including other objections

pertaining to relevancy—such as the danger of undue prejudice (Rule 403) or *the character rule (Rule 404)*—must ... be stated specifically.

1 Weinstein's Evidence ¶ 103[02], at 103–20 (1980) (emphasis added).

[Bryant's] medical expenses is not before the jury in determining damages." However, in cross-examination of Dr. Stoltmann, Conrail asked Stoltmann, "what is the total amount of fees that you have charged to the plaintiff for your services?" Bryant's counsel objected on the ground that the stipulation precluded the question. Conrail asserted that it wished to introduce the question of fees not on the issue of damages but to show that Dr. Stoltmann could not have considered Bryant's injuries very serious if his fees were so low. The court overruled the objection, and Stoltmann testified that his total fees were $150–$200.

The stipulation explicitly refers to the use of medical bills on the issue of damages. Conrail's use of the amount of Dr. Stoltmann's fees on the issue of liability was not clearly barred by the stipulation. *Cf. Sullivan v. Scafati*, 428 F.2d 1023, 1026 (1st Cir. 1970), *cert. denied*, 400 U.S. 1001, 91 S.Ct. 478, 27 L.Ed.2d 452 (1971) (evidence of oral admission in form of testimony from two police officers admitted despite pretrial stipulation that prosecution would not introduce confession or admissions of either defendant). Bryant was, of course, free on redirect examination of Dr. Stoltmann to try to minimize any adverse inference drawn from the relationship between the seriousness of a patient's injury and the doctor's fees. Relief from the stipulation itself could also have been sought. *United States v. Rexach*, 482 F.2d 10, 26–27 (1st Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973). We do not think the admission of the testimony about medical fees constituted reversible error.

*Affirmed.*