BECK v. WINGS FIELD, Inc.

No. 7668.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

---

Joseph W. Henderson, of Philadelphia, Pa. (Rawle & Henderson, and Thomas F. Mount, all of Philadelphia, Pa., on the brief), for appellant.

Alfred L. Wolf, of Philadelphia, Pa. (Bernard Eskin and Wolf, Block, Schorr & Solis-Cohen, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

This is an appeal from a judgment entered by the court below on a jury's verdict for the plaintiff in a civil action for damages for personal injury and property damage due to the defendant's alleged negligence. For the consideration of the principal matter assigned here for error, a brief statement of the material facts will suffice.

While the plaintiff, a student pilot, was landing his aeroplane on a flying field owned and operated by the defendant for public use, the plane, which was then running along the ground, turned over with consequent injury to the plaintiff and damage to the plane. It is the plaintiff's allegation that there was a depression in the portion of the flying field where he was attempting to make his landing and that the defendant's maintenance of a public flying field with such a depression unmarked constituted negligence which was the proximate cause of the plaintiff's accident.

The plaintiff called as a witness one Bullard. Counsel for the defendant immediately asked for an offer of proof at side bar. At that point, the record indicates no more than a notation, "(Discussion at side bar.)" In the appellant's statement of the case it is said that "The plaintiff called Edward Bullard, an experienced flier, for the purpose of giving his opinion as to the depression in question * * *." This assertion, the appellee does not controvert by counterstatement, presumably agreeing with the appellant's statement. Rule 26-5 (c) of this court. The appellant also states in its printed argument that "Plaintiff's counsel stated that the witness was being called as an expert as to the alleged unsafe condition of the portion of the field involved in the plaintiff's accident." Whatever the scope of the offer may have been, at the conclusion of the side bar discussion, counsel for the plaintiff resumed his direct examination of the witness. After eliciting from him his qualifications as an aviator and his knowledge of flying fields in general and of the defendant's field in particular, plaintiff's counsel asked,—"Are you familiar with the scene of Mr. Beck's accident?"

To which the witness responded,—"Yes, sir, I cracked up in the same ditch."

Counsel for the defendant immediately moved for the withdrawal of a juror and the direction of a mistrial. The court indicated an intention to overrule the motion and said to the jury,—"I want to say to the members of the jury that I want you to disregard that evidence entirely. That has nothing to do with this case."

Counsel for the defendant continued to urge his motion vigorously, in the course of which he said,—"I think the statement as made is very prejudicial to our case. It is something that I am thoroughly familiar with, because I saw this gentleman on the field after his crack-up, and I could have a complete defense to it, which has nothing to do with this particular case, and it happened considerably afterwards, and I anticipated that just about something like this would come out, and it certainly is a ground, as far as we are concerned, that this jury should not go further in considering the matter. It hasn't anything to do, it wasn't near this ditch, and yet it is in this case."

There was further discussion by both counsel. All of this took place in the hearing of the jury. The court then called a recess to hear counsel further in chambers. Upon resuming the trial, the court said to the jury,—"Members of the jury, as I said to you before we took a recess, I want you in the consideration of this case to disregard that statement made by the witness. That statement was highly improper. If he did have an accident it may have been this witness's fault, it may have been the fault of the field, I don't know, and you should not in any way consider it. It should have no bearing whatever in the deliberation and your consideration in this particular case, and I trust that when you get to the jury room you will erase this reference from your minds, because it would be very unfair to have that considered by any single juror in connection with this case."

Counsel for the defendant then formally took an exception to the court's refusal to withdraw a juror and the court recognized counsel for the plaintiff for further questioning of the witness. Immediately thereupon, counsel for the plaintiff said that he had "No more questions"; defendant's counsel did not cross-examine; and the witness left the stand.

The jury returned a verdict for the plaintiff, which, incidentally, was somewhat inconsistent in amount, considering that, necessarily, the jury must have found the defendant negligent. The verdict returned was for the exact amount agreed upon by the parties in pre-trial conference as being the extent of the damages to the plane only. It is evident, therefore, that the jury awarded the plaintiff nothing for his personal injuries, which according to his proofs, were serious. The inconsistency of the verdict may well represent the compromise of a conflict among the jury engendered by prejudice; and the possibility of the uneradicated effect of admittedly improper matter in the jury's disposition of the case is the thing to which this appeal directs our attention.

The defendant filed a motion for a new trial, giving, inter alia, as a reason in support thereof the trial court's refusal to withdraw a juror because of the prejudicial matter already referred to. The court refused the defendant's motion for a new trial and, from the judgment entered for the plaintiff, the defendant took the pending appeal.

■ A wide range of discretion rests with the trial court in the granting or refusing of a new trial. See Federal Rules of Civil Procedure, Rule 61, 28 U.S.C.A. following section 723c. In fact, it is only for an abuse of discretion in refusing a new trial that an appellate court will reverse. The term abuse, however, when applied to a court's exercise of its discretion is peculiarly of legal significance, wholly unrelated to the meaning of the same term when used in common parlance. Action that would be necessary in ordinary affairs to make one guilty of an abuse connotes conduct of a different grade than what is meant when a court is said to have abused its discretion. Abuse of discretion in law means that the court's action was in error as a matter of law. And where such abuse exists, reversal will be ordered. See Cervin v. W. T. Grant Co., 5 Cir., 100 F.2d 153, 155, 156.

■ Here, we have the case of a gratuitous remark by a witness for the plaintiff which not only defendant's counsel says was improper but which the trial court told the jury was "highly improper" and which counsel for the plaintiff admits was improper. What, then, was the degree of its impropriety? Could its undeniably harmful effect be obliterated by the court's admonition to the jury, or was it such that, in the contemplation of the law, the trial could no longer be proceeded with with fairness and impartiality to the defendant? The question, therefore, with which we have to deal is whether the prejudicial and harmful effect of the volunteered remark could possibly be eradicated from the jury's thinking while deliberating upon

the case. If it could, then no harm was done and the trial court's refusal to withdraw a juror was not error, for the learned trial judge did everything possible in an effort to have the jury banish from their minds the thought which the witness had improperly injected. But, after careful consideration, we are of the opinion that this was not legally sufficient. The only way that the defendant can be protected against the strong possibility of harm from the improper occurrence at trial for which it was in no way responsible is by having a new trial.

■■■■ Obviously, it would be impossible to find a case in which the relation of the improper remark to the subject matter under inquiry would be the same as in the case under consideration. The effect of improper matter necessarily varies according to "the atmosphere of the trial". Each case of this nature must be examined upon its own facts. Stephens v. Sulkin, 280 Pa. 211, 214, 124 A. 476. Many cases could be cited where it has been held to be an abuse of a trial court's discretion not to withdraw a juror, even though the court instructed the jury in strong language to disregard the improper matter. But such cases, with their different facts, do not establish a rule which may be applied arbitrarily. There are, however, certain definite principles applicable to a case such as the present. It will be conceded that, ordinarily, prejudicial remarks of counsel call for the direction of a mistrial. And it has been said that "It is quite as necessary to protect a party against the improper remarks to a jury made by a witness as it is against such remarks when uttered by counsel. In either case, it is inexcusable, and the only protection the injured party has must come from the court, and it should act promptly in the matter." Surface v. Bentz, 228 Pa. 610, 613, 77 A. 922, 923, 21 Ann.Cas. 215. The court in the Surface case went on to show that the instructions which the trial court there gave were not sufficient to remove the effect of the improper remarks from the minds of the jurors. If prejudice remains after instructions to disregard have been given, instructions are patently inefficacious. In such instance, the withdrawal of a juror becomes mandatory. See Hamory v. Pennsylvania, Monongahela & Southern Railway Co., 222 Pa. 631, 634, 72 A. 227; Lilly v. Metropolitan Life Insurance Co., 318 Pa. 248, 253, 177 A. 779.

The remark in this case was not only improper as introducing collateral matter of like general nature which had no proper place in the case but, more than that, it was positively harmful. It brought to the minds of the jury from a witness, who admitted to large experience in flying and knowledge of aeroplanes, that even he, expert as he was, had had an accident at the same "ditch". To refer to his unrelated "crash" was bad enough but even the "ditch", according to another of the plaintiff's witnesses, was "really not a ditch, * * * [but] just a depression" which was smooth "if you mean there are no abrupt bumps or holes or things like that". Furthermore, after the court had refused the defendant's motion to withdraw a juror, counsel for the plaintiff asked no further questions of Bullard, although the witness had not yet been interrogated for the purpose for which he had been offered. There was not only the harm from what the witness did say but also possible harm from the jury's speculating as to what he apparently had not been permitted to say. Counsel for the plaintiff explains his failure to ask the witness any further questions on the ground that, having received one improper gratuity from the witness, he did not want to take the risk of further questioning which might be used by the witness for additional improper remarks. But, even so, the effect of the entire episode was such as to raise grave doubt that the jury was unaffected by the improper remark and the circumstances attending it. The motion to withdraw a juror should, therefore, have been granted and a mistrial directed.

The judgment of the District Court is reversed and a new trial ordered.