**Earl J. PICOU, Plaintiff-Appellant,**

v.

**AMERICAN OFFSHORE FLEET, INC., et al., Defendants-Appellees.**

No. 76–3632.

United States Court of Appeals, Fifth Circuit.

July 12, 1978.

Robert A. Pitre, Jr., Gretna, La., M. T. Melvin, Larose, La., for plaintiff-appellant.

William A. Porteous, III, William W. Miles, New Orleans, La., for defendants-appellees.

Before TUTTLE, GEE and FAY, Circuit Judges.

TUTTLE, Circuit Judge:

Earl J. Picou, a seaman, appeals from a judgment in his favor awarding him maintenance and cure, exemplary damages, and attorney's fees, but denying maintenance and cure for part of the period in issue. His principal complaint is that his case was tried by the wrong tribunal, the trial court having struck his jury demand.

While working on board a vessel on the morning of January 10, 1973, Picou suffered a mild heart attack. His captain took him to the hospital where he remained until January 16. A convalescent period at home followed the hospitalization. He returned to work on February 5. On May 1 he suffered a second milder heart attack and

was hospitalized until May 18. He again returned to work on June 11 and was terminated from his employment five days later.

Picou filed this action seeking maintenance and cure and damages for failure to pay maintenance and cure. He also sought to allege a Jones Act violation.[1]

The plaintiff alleged that "it became the duty of his employer to provide maintenance, and proper medical attention;" then alleged "despite plaintiff's unavailing demand therefor, defendants intentionally or negligently refused, thus causing plaintiff and his family severe financial hardship and a, worsening of plaintiff's heart condition causing him to suffer two subsequent heart attacks."

The trial court, apparently considering these allegations as merely a statement that the defendant was indebted to the plaintiff for the unpaid maintenance and cure, together with attorney's fees and exemplary damages, all allowable as a part of maintenance and cure under the appropriate circumstances, granted the defendants' motion to strike the jury demand. The case was then tried before Judge Christenberry who died before rendering his decision in the case. Subsequently, the case was reassigned to another judge and judgment rendered by consent of the parties on the record established before Judge Christenberry.[2]

The trial court found, on undisputed testimony, that Picou and his wife attempted on several occasions to obtain compensation from the defendant for maintenance and cure. It found "that the defendant arbitrarily failed in its duty to investigate and pay plaintiff for the first period of illness and in addition to the amount of mainte-nance and cure to plaintiff, defendant shall be required to pay plaintiff for such part of the claim, his attorney's fees and damages," citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); *Blanchard v. Cheramie*, 485 F.2d 328 (5th Cir. 1973).

The court then found that maintenance and cure were due also for the period following the second heart attack, but that the plaintiff had made no prior demand for this payment. It therefore denied attorney's fees and exemplary damages for the claim. The court also found that "there is no medical evidence in the record whatsoever to sustain plaintiff's contention that the second heart attack and subsequent conditions were caused or aggravated by any anxiety for failure to pay maintenance and cure during the period of the first heart attack."

Finally, the court said "since the action of the defendant as to the first claim for maintenance and cure was unreasonable, arbitrary and caused anxiety and stress (which, however, was in no way related to the second claim for damages and for which there is no proof that his injury was aggravated as stated above) plaintiff is entitled to be compensated for such, pursuant to the principles set forth in *Vaughan v. Atkinson, supra*, and *Blanchard v. Cheramie, supra*, and exemplary damages in accord with the traditional concept of the law of damages as enunciated by Judge Stewart in his dissenting opinion in the *Vaughan* case." The court fixed this amount at $750 in addition to the attorney's fees previously allowed.

■ Picou bases his claim that his entire case should have been tried before a jury rather than having been tried entirely be-

---

1. The Jones Act, 46 U.S.C. § 688, provides:

    Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in cases of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

2. The appellee does not contend that this consent waived the plaintiff's claim to a jury trial.

fore a judge without a jury on the statutory right to a jury trial in Jones Act cases and the Supreme Court's decision in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Defendant here did not claim that the Jones Act case should not have gone to a jury, but it contended that the allegations of the complaint failed to make out a case under that statute. Nor can the appellee contest the principle that where a true Jones Act case is alleged together with a case for maintenance and cure, both cases are to be tried before a jury. *Fitzgerald v. United States Lines Co., supra.* In *Fitzgerald*, the injured seaman had sued for negligence and unseaworthiness and for failure to provide maintenance and cure. The trial court had allowed the negligence and unseaworthiness cases to go to the jury, which found against the plaintiff, but had reserved trial on the maintenance and cure claims for itself. The Supreme Court reversed and directed that although the only issue left was that of maintenance and cure the trial court, on remand, should provide a jury trial on that issue.

Here, then, we must merely decide whether the complaint presented a case under the Jones Act. Picou sues for more than simply the amount of money he was entitled to for maintenance and cure. He also seeks damages for what he contends was a physical injury in the nature of two subsequent heart attacks because of the intentional or negligent refusal of the defendant to discharge its financial obligations to him while he was in critical condition.

The defendant takes the position that since a recovery representing these same elements could be available to Picou in a simple action for maintenance and cure, he could not allege a tort claim comprehending the same elements of injury and right of recovery. This is simply not the law. In *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932), it became necessary for the Supreme Court to determine whether a negligent failure to furnish proper care to a seaman who died on board ship could be the basis of an action for negligence as well as for the traditional action for maintenance and cure. The question arose because, as stated in the opinion, if the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him, "the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt," *citing The Iroquois*, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904). The Court pointed out that such a right of action did not survive the death of the injured party. It therefore looked to the Jones Act to see whether the same injury could be made the basis of a suit for negligence, as to which there is a right of survivorship. The Court said:

We think the origin of the duty is consistent with a remedy in tort, since the wrong, if a violation of a contract, is also something more. . . . For breach of a duty thus imposed, the remedy upon the contract does not exclude an alternative remedy built upon the tort.

287 U.S. at 372, 53 S.Ct. at 174.

The Court also said:

So, in the case at hand, the proper subject of inquiry is not the quality of the relation that gives birth to the duty, but the quality of the duty that is born of the relation. If the wrong is of such a nature as to bring it by fair intendment within the category of a "personal injury" that has been caused by the "negligence" of the master, it is not put beyond the statute because it may appropriately be placed in another category also.

287 U.S. at 373, 53 S.Ct. at 175.

Referring to the announced position of the Court that this act is to be liberally construed in aid of its beneficent purpose, the Court then said:

Approaching the decision of this case in a like spirit of liberality, we put aside many of the refinements of construction that a different spirit might approve. The failure to furnish cure is a personal injury actionable at the suit of the seaman during life, and at the suit of his

personal representative now that he is dead. (citations omitted)

387 U.S. at 375–76, 53 S.Ct. at 176.

We can perceive no basis for holding that if a negligent failure to furnish maintenance and cure gives rise to a tort claim for the purpose of surviving the death of the seaman, it may not be the basis of a tort claim for the purpose of obtaining a jury trial.

█ It is clear from the record of this trial that Picou's desire to have a jury trial is based on more than a wish to have another day in court on his maintenance and cure claim. There was sufficient evidence of callousness to the demands of the plaintiff for the payment of his hospital and medical bills and money for his maintenance while disabled from the first heart attack to cause the trial court to decide that "the action of the defendant as to the first claim for maintenance and cure was unreasonable, arbitrary and caused anxiety and stress." Although the trial court decided that in the absence of medical testimony it should find that there was no proof that the second heart attack in the month was caused or aggravated by this "anxiety and stress" we are of the view that Picou was entitled to have a jury pass on this issue. *See Sentilles v. Inter-Caribbean Corp.*, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), in which the Supreme Court said:

> The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause.

361 U.S. at 109, 80 S.Ct. at 175.

We conclude that the trial court erred in striking the plaintiff's jury demand. The judgment is REVERSED and the case is REMANDED for a new trial.