Calvin **RHODES,** Plaintiff–Appellee, Cross–Appellant,

v.

**GUIBERSON OIL TOOLS,** a/k/a F.I.E., a/k/a Div. Dresser Ind. Inc., Defendant–Appellant, Cross–Appellee.

No. 92–3770.

United States Court of Appeals, Fifth Circuit.

April 24, 1996.

618

Joseph L. Waitz, Jr., Waitz & Downer, Houma, LA, for Rhodes.

Thomas Joseph Lutkewitte, Joseph Paul Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, Felix J. Springer, Day, Berry & Howard, Hartford, CT, for Guiberson Oil Tools.

Elizabeth Anne Schartz, Thompson & Knight, Dallas, TX, for Johnson & Johnson Consumer Products, Inc.

Douglas S. McDowell, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Council, amicus curiae.

Jeffrey C. Londa, Hutcheson & Grundy, Houston, TX, for Texas Association of Business & Chambers of Commerce, amicus curiae.

Sidney Samuel Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Richard T. Seymour, Teresa Anne Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for Lawyers Committee for Civil Rights Under Law, amicus curiae.

Dori Kay Bernstein, Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity Commission, amicus curiae.

Janette B. Johnson, National Employment Lawyers Association, Dallas, TX, for National Employment Lawyers Association, amicus curiae.

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and ZAGEL, District Judge.*

EMILIO M. GARZA, Circuit Judge:

This case comes to the original panel on remand from our recent en banc decision for consideration of issues pertaining to damages. Our en banc decision affirmed the district court's denial of Defendant Guiberson Oil Tools' motion for judgment notwithstanding the verdict. Guiberson Oil Tools appeals the district court's calculation of damages. Plaintiff Calvin Rhodes cross-appeals the district court's calculation of damages, and also cross-appeals the district court's denial of his motion for directed verdict on the issue of willfulness. We affirm in part, vacate in part, and remand.

I

Rhodes filed suit against his former employer, Guiberson Oil Tools, alleging age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). In a bifurcated trial, a jury found (1) that Guiberson Oil Tools terminated Rhodes because of his age, and (2) that Guiberson Oil Tools did not act willfully when it terminated Rhodes. The action was then dismissed as time-barred. Rhodes filed a timely notice of appeal. We reversed and remanded to the district court. *Rhodes v. Guiberson Oil Tools, Div.*, 927 F.2d 876 (5th Cir.), *cert. denied*, 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991). On remand, the district court calculated damages in the amount of $188,866.70. To arrive at this sum, the district court added $355,097.00 for back pay, $138,322.36 for front pay, and $237,202.14 for pension benefits. The district court then offset $194,613.00 for interim earnings, $86,295.85 for projected future earnings, and $260,845.95 for pension benefits already paid. After judgment was entered in favor of Rhodes, Guiberson Oil Tools filed a motion for judgment notwithstanding the verdict, which the district court denied. Guiberson Oil Tools filed a timely notice of appeal. The original panel reversed and rendered judgment for Guiberson Oil Tools. *Rhodes v. Guiberson Oil Tools*, 39 F.3d 537 (5th Cir.1994). At rehearing en banc, we affirmed the district court's denial of Guiberson Oil Tools' motion for judgment notwithstanding the verdict and remanded to the original panel for consideration of the re-

---

* District Judge for the Northern District of Illinois, sitting by designation.

**620**

maining issues. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989 (5th Cir.1996).

## II

■ In reviewing a district court's award of damages, we review all issues of law de novo. Absent an error of law, a district court's award of compensatory damages presents an issue of fact, subject to the clearly erroneous standard of review. *Sockwell v. Phelps,* 20 F.3d 187, 192 (5th Cir.1994); *Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 597 F.2d 71, 75–76 (5th Cir.1979).

### A

#### 1

■ Guiberson Oil Tools first argues that the district court erred by failing to deduct $30,372.00 in severance pay from its award of back pay. The purpose of the ADEA is to make the plaintiff whole. *Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1471 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). Therefore, in order to properly calculate damages, post-termination economic benefits should be subtracted from a plaintiff's economic losses attributable to the termination. *Brunnemann v. Terra Int'l, Inc.,* 975 F.2d 175, 178 (5th Cir.1992). Severance pay is a post-termination economic benefit that Rhodes would not have received had he remained employed by Guiberson Oil Tools. Accordingly, we find that the district court's failure to deduct the $30,372.00 severance pay amount from its back pay award was clearly erroneous.

#### 2

■ Guiberson Oil Tools next contends that the district court erred in its calculation of damages relating to Rhodes's pension benefits. The present value of a plaintiff's interest in a pension plan is recoverable as an element of damages under the ADEA. *Huk-*

*kanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101,* 3 F.3d 281, 286–87 (8th Cir.1993); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1021 (1st Cir.1979). "Present value" should be determined as of the date of settlement or judgment. *Hukkanen,* 3 F.3d at 286. The "plaintiff's interest" in a pension plan should be determined by considering both the amount of pension benefits the plaintiff would have received had he not been terminated and the amount of pension benefits, if any, that the plaintiff actually received. *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 87 (2nd Cir.1983).

Evidence at trial demonstrated that, upon retirement in 1995 at age sixty-five, Rhodes would have received $281,045.00 in pension benefits. In its calculation of damages, the district court allowed $237,202.00 for pension benefits, the present value (as of the date of judgment in 1992) of the $281,045.00 that Rhodes would have received in 1995. Evidence at trial also established that Guiberson Oil Tools paid Rhodes a lump sum pension benefit of $260,846.00 when he was terminated in 1987. In its calculation of damages, the district court allowed Guiberson Oil Tools a credit for this $260,846.00 amount. In so doing, the district court, in effect, subtracted the *1987 value* of the lump sum payment from the *1992 value* of what Rhodes would have received in 1995. In order to accurately calculate the "present value of the plaintiff's interest in the pension plan *as of the date of settlement,*" *Hukkanen,* 3 F.3d at 286 (emphasis added), the 1992 value of what Rhodes would have received as pension benefits in 1995 should have been offset by the *1992 value* of the lump sum payment made in 1987. By offsetting the 1992 value of the pension benefits with the *1987 value* of the pension payment, the district court understated the value of the lump sum payment, thus putting Rhodes in a position that was "better than whole." *Glover v. McDonnell Douglas Corp.,* 981 F.2d 388, 397 (8th Cir. 1992), *cert. granted and judgment vacated on other grounds,*[1] ⎯ U.S. ⎯, 114 S.Ct. 42,

---

**1.** On remand, the Eighth Circuit expressly incorporated by reference its earlier analysis concerning the plaintiff's pension benefits. *See Glover v. McDonnell Douglas Corp.,* 12 F.3d 845, 848 & n. 3 (8th Cir.) (vacating the district court's award of

pension credit and inviting district court to rely on previous opinion for analysis), *cert. denied,* ⎯ U.S. ⎯, 114 S.Ct. 1647, 128 L.Ed.2d 366 (1994).

126 L.Ed.2d 13 (1993); *see id.* at 396–97 (remanding for modification of a district court order that would have awarded "full pension payments *plus* the pension payments he has already received"). We thus find that the district court's calculation of damages concerning Rhodes's pension benefits was clearly erroneous.

3

■■■ Guiberson Oil Tools next contends that the district court erred in finding that Rhodes adequately mitigated his damages. The ADEA requires that plaintiffs use reasonable efforts to obtain other employment after termination. *Hansard,* 865 F.2d at 1468. We review a finding that a plaintiff used reasonable efforts to obtain other employment as a determination of fact, reversible only if clearly erroneous. *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir.), *cert. denied,* 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990). Rhodes was terminated by Guiberson Oil Tools in October of 1986, and commenced regular employment with another company in August of 1987. Evidence at trial established that in the intervening months Rhodes participated in a failed business venture related to oil field technologies, solicited the services of a "headhunter" in Houston, and entered negotiations concerning the terms of his eventual employment. On this record, the district court's finding that Rhodes used reasonable efforts to obtain other employment following his termination by Guiberson Oil Tools is not clearly erroneous. Accordingly, the district court did not err in finding that Rhodes adequately mitigated his damages.

4

■■■ Guiberson Oil Tools next contends that the district court erred in calculating Rhodes's damages for back pay. At the time of his termination in October of 1986, Rhodes was earning $5,062.00 per month. The magistrate judge used this figure to calculate damages for back pay for the period between November 1986 and August 1990. The magistrate judge then made a finding that Rhodes would have received a five percent increase in salary in September 1990 had he not been terminated by Guiberson Oil Tools. Accordingly, the magistrate judge calculated back pay at the rate of $5,315.00 per month for the period between September 1990 and the date of judgment in July 1992. Rhodes's uncontradicted testimony at trial established that he received *at least* a five percent increase in salary *every year* that he was employed by Guiberson Oil Tools. Based on this record, the district court's finding that Rhodes would have received a five percent increase in salary if he had not been terminated by Guiberson Oil Tools is not clearly erroneous.

B

1

■■■ The ADEA provides that liquidated damages are available to plaintiffs in cases in which the ADEA violation is willful. 29 U.S.C. § 626(b). On cross-appeal, Rhodes argues that the district court erred in denying his motion for directed verdict on the issue of willfulness. We will reverse a district court's denial of a plaintiff's motion for directed verdict only if the facts and inferences point so strongly in the plaintiff's favor that reasonable persons could not arrive at a contrary verdict. *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 615 (5th Cir.1985). An employer acts willfully when the employer either knows or shows reckless disregard for whether its conduct violates the ADEA. *Purcell v. Seguin State Bank & Trust Co.,* 999 F.2d 950, 955 (5th Cir.1993). Having closely reviewed the record as a whole, we find that the facts and inferences on this issue do not point so strongly in Rhodes's favor that reasonable persons could not arrive at a verdict that Guiberson Oil Tools did not willfully violate the ADEA. Therefore, the district court did not err in denying Rhodes's motion for directed verdict on the issue of willfulness.

2

Rhodes next asserts that the district court erred in calculating his damages for pension benefits and front pay. Regarding pension benefits, the district court found that Rhodes would have received $281,045.00 in pension benefits in January 1995, had Guiberson Oil

Tools not terminated him. Regarding front pay, the district court found that Rhodes would have received $154,820.80 in salary, at $5,315.00 per month, in the period between the date of judgment in July 1992 and Rhodes's expected retirement in January 1995, had Guiberson Oil not terminated him. The district court then discounted both these sums to present value, as of the date of judgment, using a market discount rate of seven percent.

In our en banc decision in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842, and cert. denied, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984), we addressed the issue of how factfinders should adjust loss-of-future-earnings awards to account for the effect of inflation. Lump sum awards for future damages should be discounted to present value in all cases in which it is reasonable to assume that interest may be safely earned on the amount that is awarded. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 536–37, 103 S.Ct. 2541, 2550, 76 L.Ed.2d 768 (1983). In an inflation-free economy, the applicable discount rate is a market interest rate, based on returns from the safest available investments. *Id.* at 537–38, 103 S.Ct. at 2550–51. However, in an inflationary economy, inflation affects both the market interest rate and an employee's future earnings. *Culver*, 722 F.2d at 118. In *Culver* we recognized the availability of several methods for adjusting damage awards to account for inflation. *Id.* However, we also recognized that allowing the parties to argue over the applicable method could potentially "convert the average accident trial into a graduate seminar on economic forecasting." *Id.* at 117 (citations and internal quotation marks omitted). Therefore, in *Culver* we chose a single method to be used by trial courts in the Fifth Circuit; we held that "fact-finders shall determine and apply an appropriate below-market discount rate as the sole method to adjust loss-of-future-earnings awards to present value to account for the effect of inflation." *Id.*[2]

The district court in Rhodes's case applied a discount rate of seven percent to both Rhodes' future pension benefits and Rhodes's lost future wages. This figure represents the average yield of T–Bills for the seven-and-one-half-year period between January 1, 1986, and the date of judgment in August 1992. The district court's calculation reasonably identifies a *market* interest rate for that period, based on the safest available investments, and thus establishes an appropriate discount rate for an *inflation-free* economy. We first consider the propriety of adopting this market interest rate as the discount rate for Rhodes's future pension benefits. Evidence at trial established that upon retirement in 1995, Rhodes would have received pension benefits totalling $281,045.00. This figure was a fixed amount, which would not have varied due to economic inflation. Therefore, the calculation of the present value of Rhodes's future pension benefits was effectively equivalent to the calculation of the present value of lost future wages in an inflation-free economy. Consequently, the district court did not err in adopting a market rate of interest of seven percent as the discount rate for Rhodes's future pension benefits.

The present value of Rhodes's lost future wages, on the other hand, was not properly calculable without considering the effect of inflation. *Culver* requires factfinders to calculate damages resulting from lost future earnings according to a below-market-discount method. This method involves two steps. First, the factfinder must calculate a future "income stream" amount by estimating the wage increases the plaintiff would have received each year as a result of all factors other than inflation.[3] *Id.* at 118. Then, because this figure will not represent a fixed amount, and will be subject to the effects of inflation, the factfinder must apply a below-market discount rate to discount the

---

2. As we stated in *Culver*, a trial court adopting a pre-tax discount rate between one and three percent will not be reversed so long as the trial court explains its choice. *Culver*, 722 F.2d at 122.

3. Even in an inflation-free economy, employee wages tend to increase over time from a number of factors, such as individual promotions and industry-wide growth. *Culver*, 722 F.2d at 117.

future income stream amount to present value. *Id.* Arguably, the district court properly conducted the first step of the below-market-discount method in calculating Rhodes's damages for lost future wages. The district court's finding that Rhodes would have received a five percent raise in September 1990 could be construed as an estimation of the wage increases that Rhodes would have received as a result of all factors other than inflation. However, the district court plainly failed to properly conduct the second step of the below-market-discount method. The district court adopted a *market* discount rate of seven percent to calculate the present value of Rhodes's lost future wages, as opposed to the *below-market* discount rate required by *Culver.*[4] For this reason, we find that the district court's calculation of damages concerning Rhodes's front pay was clearly erroneous.

**3**

▆▆▆▆ Rhodes next contends that the district court erred by not awarding damages allegedly resulting from his loss of fringe benefits. A plaintiff suing under the ADEA may recover damages as compensation for pecuniary losses of fringe benefits. *Brunnemann,* 975 F.2d at 178. However, the factfinder may not award damages for losses not supported by the evidence. *See id.* at 179–80 (finding no merit in plaintiff's claims for loss of insurance, where plaintiff presented no

evidence as to replacement expenses actually incurred). Rhodes asserts that he is entitled to receive damages for his loss of vacation time. However, Rhodes offered no competent evidence as to the value of this loss.[5] Rhodes also asserts that he is entitled to receive damages based on his loss of employer-supplied insurance. However, Rhodes failed to offer any evidence as to the cost of replacement insurance or other related out-of-pocket expenses. Rhodes additionally asserts that he is entitled to receive damages based on his loss of personal use of an employer-supplied automobile. However, Rhodes failed to offer any evidence concerning the value of the automobile or replacement expenses actually incurred. Rhodes further asserts that he is entitled to receive damages based on his loss of employer-provided recreational activities, including a club membership, sports and theater tickets, a hunting lease, and access to a condominium. However, Rhodes presented no evidence of replacement expenses actually incurred in connection with such activities.[6] Therefore, the district court's determination not to award damages allegedly resulting from Rhodes's loss of fringe benefits was not clearly erroneous.

**4**

▆▆▆▆ Rhodes next asserts that the district court erred by not awarding prejudgment interest. Although an award of pre-

---

4. We recognize the somewhat formal nature of this analysis, but we note that *Culver* is a very formal opinion. One of the available methods we discussed in *Culver* is the "case-by-case" method. According to this method, the factfinder estimates the wage increases the plaintiff would have received as a result of all factors *including* inflation. *Culver,* 722 F.2d at 118. The resulting figure is then discounted according to a *market* interest rate. *Id.* Arguably, the district court utilized this method to calculate Rhodes's lost future wages. In *Culver* we acknowledged that the case-by-case method was "theoretically accurate," but we squarely rejected its use in the Fifth Circuit, largely due to the length and complexity of the proceedings necessary to engage in forecasts of future inflation. *Id.* at 119–20.

5. While Rhodes received five weeks of paid vacation at Guiberson Oil Tools, he receives two weeks of paid vacation from his present employer. However, Rhodes's assertion that he should

receive three weeks' salary per year as compensation for his loss of vacation time is without merit. Rhodes's damages for lost wages were computed based on a fifty-two week work year. Allowing recovery of three weeks' salary as compensation for loss of vacation time would result in Rhodes receiving fifty-five weeks' salary in lost wages per year. Rhodes presented no evidence indicating that he would have been paid three extra weeks' salary at Guiberson Oil Tools had he only taken two of his five weeks' vacation time. Thus, valuation of his loss of leisure time must come from some source other than reference to his salary.

6. Rhodes testified that all of these recreational activities were provided by Guiberson Oil Tools primarily for business purposes, such as client entertainment. Rhodes also testified that his present employer would reimburse him for similar expenses incurred in connection with his present employment.

judgment interest is generally considered consistent with the purpose of the ADEA to make the plaintiff whole, the decision whether to award prejudgment interest is within the sound discretion of the district court. *Sellers v. Delgado Community College,* 839 F.2d 1132, 1140 (5th Cir.1988). The district court found that Rhodes was made whole without an award of prejudgment interest.[7] Based on our thorough review of the record, we cannot find that the district court abused its discretion in determining not to make such an award.

## III

Accordingly, we AFFIRM the district court's denial of Rhodes's motion for directed verdict on the issue of willfulness. We VACATE the district court's award of damages, and we REMAND to the district court for further proceedings consistent with this opinion.

---

**7.** The district court is, of course, free to reconsider this finding on remand in light of the changes to Rhodes's damage award required by this opinion.