# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2025

Lyle W. Cayce
Clerk

No. 23-30494

———————

JAMAL VAUGHN,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

AMERICAN COMMERCIAL BARGE LINE, L.L.C.,

*Defendant—Appellant/Cross-Appellee*.

———————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-7735

———————

Before RICHMAN, OLDHAM, and RAMIREZ, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:*

Jamal Vaughn sustained injuries while serving as a deckhand aboard the M/V EXPLORER, owned and operated by American Commercial Barge Line (ACBL). ACBL stipulated to liability under the Jones Act, and the case focused on Vaughn's damages. ACBL appeals the district court's calculation of Vaughn's past and future wage losses while Vaughn appeals the district

———————

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

1

court's denial of his claim for punitive damages and attorney's fees for failing to pay cure benefits timely. We vacate and remand in part and affirm in part.

## I

Jamal Vaughn worked as a deckhand aboard the M/V EXPLORER, owned and operated by ACBL. The EXPLORER collided with a moored vessel, and Vaughn sustained injuries to his head, neck, back, and right shoulder. ACBL stipulated to liability under the Jones Act, and the case proceeded to a bench trial to adjudicate Vaughn's damages.[1]

Both parties provided reports from economic-loss and vocational-rehabilitation experts. The experts offered substantially different estimates of Vaughn's past and future wage losses. Specifically, Vaughn's expert estimated his past wage loss as $221,246 and his future wage loss as $1,604,256.[2] In contrast, ACBL's expert assumed Vaughn could have returned to the workforce in December 2021 and therefore estimated his past wage loss as ranging between $182,958.91 and $205,519.68. Additionally, ACBL's expert estimated Vaughn's future wage loss to range between $404,868.87 to $496,804.78 with a midpoint of $450,836.82.

The district court awarded Vaughn $221,246 for past wage loss (fully accepting the estimate provided by Vaughn's expert) and $750,000 for future wage loss. The district court derived the future wage loss amount from the expert reports: "Extrapolating from the calculations by competing economists, the Court finds that Mr. Vaughn's loss of future earnings is $750,000 (after taxes)." The district court additionally awarded damages for past and future medical expenses, pain, and suffering, and future disability.

---

[1] 46 U.S.C. § 30104.

[2] The future wage loss figure is based on an assumption of Vaughn returning to work earning a minimum wage of $15,080 per year.

No. 23-30494

The district court declined to award Vaughn punitive damages or attorney's fees for failure to pay cure benefits timely. Both ACBL and Vaughn have appealed.

## II

The parties debate whether the district court erred in calculating Vaughn's past wage loss by failing to consider evidence of his ability to return to work prior to the trial.

In the Jones Act context, a plaintiff has a duty to mitigate damages.[3] The defendant bears the burden of establishing the plaintiff failed to mitigate damages.[4] If a district court determines a Jones Act plaintiff failed to mitigate damages by seeking reasonable employment, it should reduce damages by the what the plaintiff could have earned had he returned to work prior to the trial.[5]

---

[3] *Williams v. Reading & Bates Drilling Co.*, 750 F.2d 487, 490 (5th Cir. 1985) ("The traditional rule is, of course, that an injured party must mitigate damages."); *Smith v. Atlas Off-Shore Boat Serv., Inc.*, 653 F.2d 1057, 1064 (5th Cir. Unit A Aug. 1981) ("In determining the amount of compensatory damages to which the discharged seaman is entitled, the seaman's duty to mitigate his losses by seeking new employment is also a consideration.").

[4] *See Kratzer v. Cap. Marine Supply, Inc.*, 645 F.2d 477, 484 (5th Cir. Unit A May 1981) ("Without more, we are unable to say that the defendant carried its burden in proving that [the plaintiff] failed to mitigate his damages."); *Realty Income Corp. v. Golden Palatka, L.L.C.*, No. 21-60567, 2022 WL 1517033, at *2 (5th Cir. May 13, 2022) ("However, the failure to mitigate damages is an affirmative defense, so it was [the defendant's] burden to prove that [the plaintiff] did not mitigate damages." (citing *In re Itron, Inc.*, 883 F.3d 553, 565 (5th Cir. 2018))).

[5] *See, e.g.*, *Ramirez v. Am. Pollution Control Corp.*, 364 F. App'x 856, 857 (5th Cir. 2010) (affirming the district court's award of damages that took into account when the plaintiff could have returned to work); *Kiwia v. M/V OSLO BULK 9*, 541 F. Supp. 3d 696, 711 (E.D. La. 2021) ("Here, the Court finds that [the plaintiff] failed to mitigate his damages by failing to seek reasonable employment in the year preceding trial and that his past wage loss award should accordingly be reduced by 15%."), *aff'd sub nom.*, *Kiwia v. Bulkship Mgmt., A.S.*, No. 21-30353, 2022 WL 3006214 (5th Cir. July 28, 2022).

No. 23-30494

"In reviewing a district court's award of damages, we review all issues of law de novo."[6] "Absent an error of law, a district court's award of compensatory damages presents an issue of fact, subject to the clearly erroneous standard of review."[7] This standard of review also applies to the determination of whether a party failed to mitigate damages.[8]

ACBL argues the district court erred because it "failed to take into account undisputed evidence of Vaughn's ability to return to work prior to trial" and therefore miscalculated his past wage loss by $38,287.09. ACBL notes medical personnel cleared Vaughn to resume some form of employment before the trial, citing three separate Functional Capacity Evaluations (FCEs) that Vaughn underwent as well as testimony of his treating physicians. Accordingly, using the date of the final FCE, ACBL contends Vaughn voluntarily failed to return to work for over a year and a half before trial and accordingly, ACBL is entitled to a reduction of past wage loss.

Vaughn offers two primary reasons why he did not return to the workforce. First, he claims his treating physician (Dr. Todd) never told him that he could return to work. Second, Vaughn argues he was in pain, was continuing his medical treatment, and was unsure whether an employer would accommodate his treatment.

We conclude that the district court did not clearly err when it fully adopted the past wage loss recommendation of Vaughn's expert, even

---

[6] *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996).

[7] *Id.*

[8] *See GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 661 (5th Cir. 2017) ("This deferential standard of review extends to determining whether a party failed to mitigate its damages.").

4

No. 23-30494

though he did not consider whether Vaughn could have returned to work before trial.

The clearly erroneous standard grants district courts great deference,[9] and an appellate court may not "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."[10] Here, the district court found Vaughn credible.[11] The district court could have concluded Vaughn sufficiently attempted to mitigate damages based on his statement that he called potential employers. Further, the district court could accept the past wage loss recommendation of Vaughn's expert.[12] Based on this evidence, the district court's implicit finding that Vaughn did not fail to mitigate his damages was not clearly erroneous because "it is plausible in the light of the record."[13]

---

[9] *See Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1041 (5th Cir. 2015) (explaining that our court declines "to second-guess the district court under the clearly erroneous standard of review").

[10] *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *see also Movible Offshore, Inc. v. M/V Wilken A. Falgout*, 471 F.2d 268, 271 (5th Cir. 1973) ("The question is not simply whether the reviewing court would have found otherwise but whether the trial court could permissibly find as it did.").

[11] *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 259 (5th Cir. 2006) ("The court owes even greater deference to findings based on the credibility of witnesses and must uphold them if based on coherent, internally consistent, and facially plausible testimony that is not contradicted by external evidence.").

[12] *See Michel v. Total Transp., Inc.*, 957 F.2d 186, 192 (5th Cir. 1992) ("The district judge correctly concluded that as fact finder, he was free to accept or reject the experts' reports and could reach his own conclusion regarding lost earning capacity.").

[13] *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 180 (5th Cir. 2020) (citing *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 574 (5th Cir. 2015)).

No. 23-30494

## III

As to Vaughn's future wage loss, the parties debate whether the district court erred by failing to calculate Vaughn's future wage loss in accordance with *Culver II*. Our circuit's method for determining future wage loss is derived from *Culver v. Slater Boat Co.* (*Culver II*).[14] In that en banc decision, we stated:

> The calculation of damages suffered either by a person whose personal injuries will result in extended future disability or by the representatives of a deceased person involves four steps: estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value.[15]

Under *Culver II*, adjusting for inflation must occur after a fact-finder calculates the lost income stream.[16] Absent party stipulation, *Culver II* held that "fact-finders shall determine and apply an appropriate below-market discount rate as the *sole* method to adjust loss-of-future-earnings awards to present value to account for the effect of inflation."[17] Above all, *Culver II* established that "[t]he paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned."[18]

---

[14] 722 F.2d 114 (5th Cir. 1983) (en banc).

[15] *Id.* at 117.

[16] *See Nesmith v. Texaco, Inc.*, 727 F.2d 497, 498 (5th Cir. 1984) (stating that under the *Culver II* method "[t]he resulting income stream is then discounted by a below-market discount rate.").

[17] 722 F.2d at 117 (emphasis added).

[18] *Id.* at 120.

No. 23-30494

As previously mentioned, in reviewing a district court's award of damages, "we review all issues of law de novo."[19] "Absent an error of law, a district court's award of compensatory damages presents an issue of fact, subject to the clearly erroneous standard of review."[20] However, damages cannot be speculative,[21] and the district court must express its findings and conclusions "with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied."[22] In cases in which the district court did not properly apply *Culver II*, we held the calculation of damages was clearly erroneous.[23]

ACBL raises two primary concerns about the calculation of Vaughn's future wage loss. First, ACBL points to alleged issues with the report produced by Vaughn's economic loss expert. Second, ACBL argues that in extrapolating from calculations by the competing economic loss experts, the district court "did not provide a *Culver II* analysis or any indication that it incorporated *Culver II* into its calculations." Specifically, ACBL claims the

---

[19] *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996).

[20] *Id.*

[21] *See Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir.) ("[A]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural."), *opinion amended and reinstated on reh'g sub nom.*, *Masinter v. Marlin Drilling Co.*, 938 F.2d 536 (5th Cir. 1991); *Culver II*, 722 F.2d at 120 ("We commonly exclude many relevant factors from consideration on the basis that they are so speculative that they cannot accurately be determined.").

[22] *Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030, 1034 (5th Cir. 1975).

[23] *See, e.g.*, *Rhodes*, 82 F.3d at 623 (holding the district court's calculation was clearly erroneous because the district court "plainly failed to properly conduct the second step of the below-market-discount method"); *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.) ("Based on *Culver II*, the trial court was clearly erroneous in accepting a damage calculation based on the average longshoreman's wage rate."), *opinion corrected on denial of reh'g*, 848 F.2d 498 (5th Cir. 1988).

7

district court "did not utilize the below-market discount method in its calculation."

In response, Vaughn argues there was no error in the district court's calculation of his future wage loss, and both experts properly utilized the below market discount method. He contends the district court's extrapolation between the two estimates complied with *Culver II*.

Although the district court acknowledged the "two economists calculated widely disparate estimates," the court did not explain how it reconciled the two figures. The award of $750,000 is an average between the estimate of Vaughn's expert ($1,604,256) and the estimate of ACBL's expert (ranging between $404,868.87 to $496,804.78 with a midpoint of $450,836.82). Consequently, the district court's declaration that it determined future wage loss as $750,000 by "[e]xtrapolating from the calculations by competing economists" does not provide sufficient reasoning for appellate review. In the absence of more information, our court cannot "determine rather than speculate that the law has been correctly applied."[24] Because *Culver II* generally requires district courts to explain their decision-making,[25] we vacate and remand on the calculation of Vaughn's future wage loss so that the district court may outline its reasoning in line with our precedent. That includes application of the four steps set forth in *Culver II*, with an explanation of the evidence that supports the findings at each step. The district court can also address the issues raised regarding Vaughn's expert report, to the extent the district court relies on part or all of that report.

---

[24] *Hydrospace-Challenger, Inc. v. Tracor/MAS, Inc.*, 520 F.2d 1030, 1034 (5th Cir. 1975).

[25] *Culver II*, 722 F.2d 114, 122 (5th Cir. 1983) (en banc) ("In judge-tried cases, a trial court adopting a pre-tax discount rate between one and three percent will not be reversed if it explains the reasons for its choice.").

No. 23-30494

## IV

We turn to Vaughn's claim for punitive damages and attorney's fees for ACBL's alleged failure to timely pay cure benefits.

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship."[26]  An injured seaman may recover punitive damages as well as attorney's fees[27] for "his employer's willful failure to pay maintenance and cure."[28]  As explained by our court:

> [T]here is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure.  If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages.  If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.[29]

There is "[n]o bright line" distinguishing what conduct entitles the seaman to punitive damages.[30]  However, our court has provided types of employer behaviors that could merit punitive damages.  These examples

---

[26] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

[27] *Vaughan v. Atkinson*, 369 U.S. 527, 529-30 (1962) (explaining the plaintiff was entitled to attorney's fees after he was forced to hire an attorney to recover maintenance and cure).

[28] *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 407 (2009).

[29] *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by*, *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), *abrogated on other grounds by*, *Townsend*, 557 U.S. at 424.

[30] *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984).

include "(1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically."[31]

The seaman faces a high burden in establishing he is entitled to punitive damages. The employer must have been not only "unreasonable"[32] but also "egregiously at fault."[33] Our court has described "this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent."[34] Ultimately, the seaman must demonstrate "an element of bad faith."[35] Moreover, the employer is permitted to investigate claims before tendering cure,[36] and untimely payments are not an independent basis for punitive damages.[37] To this point, our court previously declared: "an employer is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman—without subjecting itself

---

[31] *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985).

[32] *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 383 (5th Cir. 2012).

[33] *Morales*, 829 F.2d at 1358.

[34] *Id.*

[35] *Harper*, 741 F.2d at 90.

[36] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) ("A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits."); *Morales*, 829 F.2d at 1358 ("Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim."); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 519 (5th Cir. 1986) ("Where doubt exists—as it reasonably did here—a vessel owner may request reasonable documentation from a seaman before it commences payment of maintenance that may prove both lengthy and expensive.").

[37] *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 n.4 (5th Cir. 1984) ("With respect to plaintiff's second argument, the cases he cited do not support such an award on the basis of untimely payment alone.").

to liability for compensatory or punitive damages."[38] We review the grant or denial of punitive damages for abuse of discretion.[39]

Some background about the payment of Vaughn's medical expenses is in order. In February 2021, ACBL's attorney stated the company would pay for "the outstanding medical expenses incurred by [Vaughn] for Dr. Todd's treatment, the updated cervical MRI, lumbar MRI, the discogram and post discogram CT scan and related expense[s]." Vaughn's attorney sent bills in March and April 2021, and a paralegal sent a follow up email (asking whether more information was necessary) in August 2021. ACBL's attorney responded shortly thereafter that he would communicate with the medical coordinator for the company "who was supposed to take care of this." The paralegal sent another follow up email in June 2022. In May 2023, ACBL's counsel requested proof of payment and followed up twice that month. Later that month, the paralegal sent an updated list of medical expenses as well as copies of cancelled checks representing payment. At the district court, ACBL explained that it paid (or would pay) for the services it received medical bills for, but needed proof of payment for the other bills. ACBL eventually agreed to pay the bills without proof of payment. The record reflects that ACBL paid $149,813.56 in medical expenses prior to trial. However, ACBL refused to pay for a service it claimed was palliative.

The district court denied Vaughn's claim for punitive damages and attorney's fees for ACBL's failure to pay cure benefits timely. Vaughn challenges that determination. He stresses that ACBL agreed to pay in 2021 but only requested proof of payment in 2023. According to Vaughn, "[i]t

---

[38] *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013).

[39] *Precision Plating & Metal Finishing Inc. v. Martin-Marietta Corp.*, 435 F.2d 1262, 1264 (5th Cir. 1970) ("[T]he grant or denial of punitive damages lies largely in the discretion of the jury or trial court, as the case may be.").

should not have taken the employer, ACBL, two and a half (2 ½) years to investigate and pay the bills incurred by plaintiff for his medical treatment."

ACBL counters that Vaughn is not entitled to punitive damages because the company "was actively making good faith efforts to reimburse Vaughn's medical expenses, despite not receiving the necessary paperwork documenting the expense." ACBL also argues it is permitted to investigate claims, and its "good faith efforts to work with Vaughn to reconcile any unpaid medical bills" do not satisfy the heavy burden required to establish an entitlement to punitive damages. Additionally, ACBL highlights Vaughn's lack of injury resulting from the delayed reimbursement.

The district court did not abuse its discretion by concluding Vaughn was not entitled to punitive damages or attorney's fees. Simply put, the present case is unlike those in which our circuit permitted punitive damages because ACBL (1) acknowledged Vaughn's claim;[40] (2) investigated his claim;[41] (3) did not refuse to make payments entirely;[42] and (4) did not terminate payments once Vaughn retained counsel.[43]

---

[40] *See Vaughan v. Atkinson*, 369 U.S. 527, 528-29 (1962) (noting the vessel owner "did not bother even to admit or deny the validity of that claim").

[41] *See id.* at 528 (explaining the vessel owner "made no effort to make any further investigation of libellant's claim for maintenance and cure"); *Picou v. Am. Offshore Fleet, Inc.*, 576 F.2d 585, 586 (5th Cir. 1978) (noting the district court found the defendant failed to investigate); *Mayne v. Omega Protein Inc.*, 370 F. App'x 510, 516 (5th Cir. 2010) (holding the award of attorney's fees was not an abuse of discretion because the defendant failed to investigate claims or make payments beyond three months after the plaintiff's injury).

[42] *See Solet v. M/V Capt. H. V. Dufrene*, 303 F. Supp. 980, 989 (E.D. La. 1969) ("In addition, the plaintiff is entitled to recover attorney's fees and damages for the willful failure to pay maintenance clearly due.").

[43] *See id.* at 985 ("But he stopped making payments when he received a letter advising that [the plaintiff] had retained an attorney.").

ACBL's untimely payments are not an independent basis for punitive damages.[44] Additionally, there is no indication that ACBL was "lax"[45] in its investigation of Vaughn's expenses. On the contrary, ACBL followed up with medical providers directly and was navigating "administrative confusion" because Vaughn's attorney did not submit proof of payment and also incorrectly claimed charges that were already paid by the company. To this point, our court previously held that a failure to pay cure is reasonable if "the seaman does not submit medical reports to document his claim."[46]

This case resembles *McWilliams v. Texaco, Inc.*[47] In that case, the plaintiff appealed the district court's entry of a directed verdict against his claim for punitive damages based on the employer's refusal to pay for several months.[48] However, the employer had a policy requiring medical reports, and when the employer "received the requested documentation, it commenced maintenance payments shortly thereafter."[49] Our court affirmed the directed verdict, holding the employer's actions were

---

[44] *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 n.4 (5th Cir. 1984) ("With respect to plaintiff's second argument, the cases he cited do not support such an award on the basis of untimely payment alone.").

[45] *Constance v. Johnston Drilling Co.*, 422 F.2d 369, 369 (5th Cir. 1970).

[46] *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1360 (5th Cir. 1987), *abrogated on other grounds by*, *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), *abrogated on other grounds by*, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

[47] 781 F.2d 514 (5th Cir. 1986).

[48] *Id.* at 515, 518.

[49] *Id.* at 519.

No. 23-30494

"reasonable under the circumstances"[50] and were not "the kind of arbitrary and calloused conduct necessary to trigger liability for punitive damages."[51]

Here too, ACBL required documentation, but once it received proof of the cancelled checks, the company promptly disbursed funds. Prior to this point, ACBL had no obligation to pay cure benefits in light of Vaughn's failure to submit proof of payment. ACBL's conduct does not evidence bad faith or indicate the company was "egregiously at fault."[52] Accordingly, the district court did not abuse its discretion in denying Vaughn's claim for punitive damages and attorney's fees.

\* \* \*

For the foregoing reasons, the district court's judgment with respect to Vaughn's future wage loss is VACATED and REMANDED. The district court's judgment with respect to Vaughn's past wage loss and claim for punitive damages and attorney's fees is AFFIRMED.

---

[50] *Id.* at 518.

[51] *Id.* at 520.

[52] *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by*, *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), *abrogated on other grounds by*, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).